Filed 6/24/24  P. v. Sawyer CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CLIFTON CHRISTOPHER SAWYER, et al.,<br><br>     Defendants and Appellants. | B329640<br><br>(Los Angeles County<br>Super. Ct. No. PA054142) |

APPEAL from orders of the Superior Court of Los Angeles County, Hilleri Meritt, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant Clifton Christopher Sawyer.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant Carlos Perdomo.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants (collectively defendants) Clifton Christopher Sawyer (Sawyer) and Carlos Perdomo (Perdomo) appeal from the order denying their petitions for vacatur of their murder convictions and for resentencing pursuant to Penal Code section 1172.6.[1] Defendants allege they made a prima facie showing of eligibility under the statute and the trial court erred in denying their petitions. Finding no merit to defendants' contentions, we affirm the orders.

## BACKGROUND

In 2007 defendants and codefendant Ivan Samaniego were convicted of murder as a part of a gang shooting. The actual shooter was not identified and all defendants were prosecuted as aiders and abettors. Defendants were tried together and each convicted of two counts of first degree murder (§ 187, subd. (a)). The jury found each defendant committed multiple murders within the meaning of the multiple murder special circumstance (§ 190.2, subd. (a)(3)) and committed the murders for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The jury also found true as to each defendant and, as to both murders, that a principal personally used a firearm (§ 12022.53, subds. (b), (c), (d) & (e)(1)). The trial court sentenced each defendant to prison for two consecutive life terms without the possibility of parole plus two consecutive terms of 25 years to life. In *People v. Samaniego* (2009) 172 Cal.App.4th 1148 (*Samaniego*), the judgments were modified to strike parole revocation fines but otherwise affirmed.

In 2019, Perdomo filed a petition for resentencing pursuant to section 1170.95, which has since been renumbered section 1172.6. Sawyer filed his section 1172.6 petition in 2021. The prosecution filed responses to the petition with a copy of the jury instructions and

---

[1]     All further unattributed code sections are to the Penal Code unless otherwise stated.

verdict forms attached. The trial court appointed counsel for defendants and each counsel filed replies. On March 29, 2023, after the trial court considered the briefs, exhibits, and counsels' arguments, and the parties submitted the matter on their paperwork, the court found defendants had not made a prima facie showing of eligibility for relief under section 1172.6, and denied the petitions.

Defendants each filed a timely notice of appeal.

## DISCUSSION

Defendants contend the record of conviction was insufficient to rebut the allegation of the petitions that they could not be convicted of murder under current law. They thus conclude the trial court erred in finding no prima facie showing of eligibility for relief under section 1172.6.

### I. *Applicable legal principles*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437, amending sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislation also enacted section 1170.95, now section 1172.6, which provides a procedure to petition for retroactive relief for those who could not now be convicted under sections 188 and 189 as amended. (See *People v. Lewis* (2021) 11 Cal.5th 952, 957.) The procedure provides that a petition may be filed by "[a] person convicted of felony murder, or murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a).) The allegations of the petition must be accepted as true but, without engaging in factfinding, the trial court may look to

3

the record of conviction in determining whether the allegations have been refuted as a matter of law. (*People v. Lewis, supra*, 11 Cal.5th at pp. 971–972.) If the petitioner establishes a prima facie case for relief, the court must issue an order to show cause, conduct an evidentiary hearing to decide whether to vacate the murder conviction, and resentence the petitioner on any remaining counts if it finds the petitioner entitled to relief. (§ 1172.6, subds. (c) & (d); *People v. Lewis, supra*, 11 Cal.5th at p. 960.) We independently review the trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

The 2019 amendments to sections 188 and 189 effectively eliminated murder liability under the natural and probable consequences doctrine and changed the requirements for felony murder liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 849.)[2] Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) "For a defendant to be liable as a direct aider and abettor, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] . . . [Citations.] 'An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation,

---

[2] Under the natural and probable consequences doctrine, a " 'person who knowingly aids and abets criminal conduct is guilty of not only the intended [target] crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime. '" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

4

having formed his own culpable intent.  Such an aider and abettor, then, acts with the mens rea required for first degree murder.' " (*In re Lopez* (2023) 14 Cal.5th 562, 579.)

## II.  *Effect of prior jury findings*

Each defendant alleged in his petition that he was not the actual killer, did not aid and abet the murder with the intent to kill, and could not now be convicted of murder under amended sections 188 or 189. The trial court found defendants' jury had not been instructed with the natural and probable consequences doctrine.  Defendants do not claim either were convicted of felony murder or murder under the natural and probable consequences doctrine but were nevertheless convicted based upon a "theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a).)

The trial court reviewed the jury instructions given at trial, as well as the jury's true finding of the multiple murder special circumstance, which provides capital punishment for a "defendant [who] in this proceeding, has been convicted of more than one offense of murder in the first or second degree." (§ 190.2, subd. (a)(3).)  The trial court noted the jury had been given CALCRIM No. 702 which instructed regarding this special circumstance as it relates to aiders and abettors.  That instruction reads in relevant part:  "In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill. [¶] . . . If you decide that the defendant is guilty of first degree murder, but you cannot agree whether the defendant was the actual killer, then, in order to find this special circumstance true, you must find that the defendant acted with the intent to kill.  [¶]  If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstance of multiple murder convictions to be true.  If the People

5

have not met this burden, you must find this special circumstance has not been proved true for that defendant."

Jury findings are properly considered by the court at a prima facie stage section 1172.6 proceeding and are binding if they meet the criteria for issue preclusion. (*People v. Curiel* (2023) 15 Cal.5th 433, 451–452 (*Curiel*); see *People v. Strong* (2022) 13 Cal.5th 698, 715–716 (*Strong*).) Jury findings can preclude the petitioner from showing that he was convicted on a theory that Senate Bill 1437 abrogated. (See *People v. Mares* (2024) 99 Cal.App.5th 1158, 1171, rev. granted May 1, 2024, S284232.) A specific jury finding that a defendant had the intent to kill "is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill [No.] 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*Curiel*, *supra*, at pp. 453–454, quoting *Strong*, *supra*, at p. 710.)

In originally affirming the judgments against defendants, this court held that as the jury found true the multiple murder special circumstance after having been instructed in accordance with CALCRIM No. 702, the jury "necessarily found" each had acted with the intent to kill. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1165.) In making its ruling, the trial court referred to our opinion in *Samaniego* and the People argued that defendants are bound by our holding that the jury found each defendant acted with the intent to kill. As explained below, we agree.

Unless an exception applies, relitigation of identical issues earlier decided is generally barred in section 1172.6 proceedings. When the issue was actually litigated and necessarily decided in the former proceeding, the decision in the former proceeding is final and on the merits, and the parties are the same. (*Curiel*, *supra*, 15 Cal.5th at pp. 451–452, citing *Strong*, *supra*, 13 Cal.5th at p. 716.)[3]

---

[3]    A notable exception is the issue of reckless indifference in cases tried before the decisions in *People v. Banks* (2015) 61 Cal.4th 788 and

6

Defendants contend the intent to kill holding in *Samaniego* cannot have preclusive effect because instructions other than CALCRIM No. 702 allowed the jury to find imputed malice. Defendants rely primarily on former CALCRIM No. 400, that instruction read at the time it was given, as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is *equally guilty* of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."[4] (Italics added.)

The propriety of instructing with CALCRIM No. 400 was at issue in defendants' direct appeal. (See *Samaniego*, *supra*, 172 Cal.App.4th at pp. 1162–1165.) There we found CALCRIM No. 400 to be an accurate statement of law but misleading under the "unique circumstances" of defendants' case because its "equally guilty" language eliminated the prosecution's need to prove the aider and abettor's own individual mental state required for murder. (*Samaniego*, at pp. 1162—1165.) We relied on *People v. McCoy* (2001) 25 Cal.4th 1111 to explain that aiders and abettors are not always equally guilty as the actual perpetrator, as it depends upon the accomplices' own mens rea, and in the case of murder, the aider and abettor " 'must know and share the murderous intent of the actual perpetrator.' " (*Samaniego*, at pp. 1164–1165, citing and quoting *People v. McCoy,* at pp. 1117–1118, 1122.)

Here, the trial court aptly described the defense position in the current proceeding as attacking the appellate court's reasoning and

---

*People v. Clark* (2016) 63 Cal.4th 522. (*Strong, supra*, 13 Cal.5th at pp. 716–718.)

[4]    The word "equally" has since been deleted from CALCRIM No. 400.

stated it was not its "job to redo the appellate court's decision." Defendants' arguments are similar to those found in *People v. Burns* (2023) 95 Cal.App.5th 862, in which the defendant asserted "that the misleading former version of CALCRIM No. 400 created, in effect, an 'other theory' of imputed malice within the meaning of section 1172.6." (*People v. Burns,* at p. 867.) However, the *Burns* court noted the defendant's argument ignored the fact that "he was entitled to an evidentiary hearing only if he made a prima facie showing of all *three* conditions listed in subdivision (a) of the statute" (*id.* at p. 867) including the condition that he "'could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019.*' (§ 1172.6, subd. (a)(3), italics added.)" (*Burns,* at p. 867, fn. omitted.) The *Burns* court explained that "[t]he problem with the 'equally guilty' language in former version CALCRIM No. 400 was not that it permitted the jury to rely on a *now*-invalid theory of criminal liability, but that it may have misled the jury as to what was *then* required to convict Burns." (*Burns,* at p. 868.)

As in *Burns*, the issue here is a claim that former CALCRIM No. 400 could have misled the jury into convicting defendants of murder regardless of their mental state. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1153.) While we agreed it could be misleading, we found the error harmless "because the jury necessarily resolved these issues against appellants under other instructions," including CALCRIM No. 702, quoted above, and CALCRIM No. 401.[5] CALCRIM

---

[5] The *Samaniego* case holding that the jury necessarily found defendants acted with the intent to kill was made in the course of the opinion's discussion of harmless error. Defendants argue at length that an appellate court's harmless error analysis is irrelevant to the issue of whether a prima facie showing has been made under section 1172.6. Our analysis here is not based on the finding of harmless error in *Samaniego*, *supra*, 172 Cal.App.4th at page 1165 but rather, on the

8

No. 401 as given at defendants' trial stated that to prove guilt as an aider and abettor the prosecution was required to prove " '1. The perpetrator committed the crime; 2. The defendant knew that the perpetrator intended to commit the crime; 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; AND 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.' " (*Samaniego,* at pp. 1165–1166.)  The crime committed was the fatal shooting of two people.  There were no instructions given at defendants' trial allowing the jury to find murder based upon the actual perpetrator's intent to commit murder or some other crime regardless of the defendants' own mens rea.

Thus, as in *Burns*, defendants' petitions have "nothing to do with the legislative *changes* to California's murder law [and] did not satisfy the section 1172.6, subdivision (a)(3) condition as part of [their] required prima facie showing." (*Burns*, *supra*, 95 Cal.App.5th at p. 867.)  "Section 1172.6 does not create a right to a second appeal . . . ." (*Burns,* at p. 865; accord, *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935–936; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1173–1174.)[6]

---

jury's implicit finding that defendants each harbored an intent to kill, as discussed in that opinion.

[6]     Sawyer goes so far as to argue that the issue presented by CALCRIM No. 400 was not addressed in the *Samaniego* opinion because it was merely *assumed* that the jurors were not misled by CALCRIM No. 400.  Paradoxically however, he challenges the way the opinion *addressed* the instruction, arguing that the court's finding of harmless error was "mere speculation."  Sawyer apparently seeks a new trial on the previously decided issue of whether the jury's finding that defendants' guilt was based upon their own intent to kill, not upon the perpetrator's.  (*Samaniego, supra,* 172 Cal.App.4th at p. 1165.)

Defendants both argue the case of *People v. Langi* (2022) 73 Cal.App.5th 972, supports their position that this court may revisit their contention, albeit rejected on appeal, that CALCRIM No. 400 may have misled the jury into imputing malice to them as aiders and abettors. In *Langi*, the defendant was convicted of second degree implied malice murder after aiding and abetting instructions that did not require the jury to find he personally acted with malice were given. (*People v. Langi*, at pp. 980–983.) Here, defendants were convicted of first degree murder and the jury found true the multiple murder special circumstance after having been instructed in accordance with CALCRIM No. 702. The jury "necessarily found" each defendant had acted with the intent to kill. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1165.) As defendants were not convicted of aiding and abetting an implied malice murder, *Langi* provides no apt comparison here. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 547.)

Sawyer states: "*Langi* is crucial because it is a post-1437 case and in that capacity elucidates the proposition that juries returning verdicts of guilty on murder charges in the pre-1437 context must *explicitly* find 'malice' to have been present in order for such conviction to stand." We did not find either the words explicit or explicitly in *Langi*, and did not find a holding in *Langi* that a finding of intent to kill must be expressed in the jury's verdict; nor did we find a holding requiring an evidentiary hearing for all "pre-1437" murder convictions in which error may have occurred, as Sawyer seems to suggest.

We conclude that in their appeal from judgment, defendants raised the issue of the possibility of imputed malice due to CALCRIM No. 400. The issue was litigated and necessarily decided against them in *Samaniego*, *supra*, 172 Cal.App.4th 1148. As that appeal is final on the merits, defendants are not entitled to relitigate the issue here. (See *Curiel*, *supra*, 15 Cal.5th at pp. 451–452.)

10

## III. *Curiel*

Relying on *Curiel*, *supra*, 15 Cal.5th at pages 462–463, defendants argue that without more, a jury finding of intent to kill does not render a petitioner ineligible for relief as intent to kill "'is only one element [and] does not by itself establish any valid theory of liability." (*Id*. at p. 463.) In *Curiel*, the defendant filed a section 1172.6 petition to vacate his murder conviction including a true finding on a gang-murder special circumstance, that the California Supreme Court held qualified for issue preclusion, specifically its finding he intended to kill. (*Curiel*, at pp. 440–441, citing *Strong*, *supra*, 13 Cal.5th at pp. 715–716.) The Supreme Court held: "The jury's finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief. [The defendant's] allegation that he could not currently be convicted of murder because of the changes in substantive law enacted by Senate Bill 1437 put at issue all the elements of murder under current law. Murder liability as an aider and abettor requires both a sufficient mens rea and a sufficient actus reus. A finding of intent to kill, viewed in isolation, establishes neither." (*Curiel*, at p. 441.)

Perdomo, cites CALCRIM No. 521, as given to the jury at trial: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill." Emphasizing *Curiel*'s language regarding the need for both mens rea and actus reus, Perdomo argues CALCRIM No. 702 regarding the special circumstance, when coupled with a reference to first degree murder in CALCRIM No. 521, presented the "same consideration" to the jury as did the gang murder special circumstance in *Curiel*. We construe Perdomo's argument to mean by "same consideration for the jury," he means the jury was instructed to determine whether defendant, as an aider and abettor, intended to kill, but the jury was not required to find a mens reus and actus reus. In *Curiel*, the court described the aider and abettor's mens rea as "knowledge that the direct perpetrator intends to

11

commit the crime or life-endangering act," and described " 'the aider and abettor's actus reus [as] conduct by the aider and abettor that in fact assists the achievement of the crime.' " (*Curiel*, *supra*, 15 Cal.5th at pp. 467–468, quoting *People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Perdomo claims that here, as in *Curiel*, the jury did not make findings regarding the mens reus and actus reus. Citing *Curiel*, *supra*, 15 Cal.5th at pp. 440–441, Perdomo concludes, that just "[a]s in *Curiel*, therefore, the jury's finding on the multiple murder special circumstance does not, itself, conclusively establish that [he] is ineligible for relief, because a petitioner who alleges that he could not currently be convicted of a homicide offense puts at issue all elements of the offense under a valid theory."

We disagree that the jury in defendant's trial was presented with the "same consideration" as the jury in *Curiel*. In *Curiel*, unlike here, the jury was instructed on the natural and probable consequences doctrine. (*Curiel*, *supra*, 15 Cal.5th at p. 446.)[7] The Supreme Court in *Curiel* found intent to kill, without more, to be insufficient to find defendant ineligible because "after the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice

_____

[7]      The trial court in *Curiel* instructed: " 'To prove that the defendant is guilty of murder under the theory of aiding and abetting [based on] natural and probable consequences, the People must prove beyond a reasonable doubt that [1] the defendant is guilty of disturbing the peace or of carrying a concealed firearm by a gang member; [2] during the commission of the crime of disturbing the peace or of the crime of carrying a concealed firearm by a gang member the crime of murder was committed; and [3] under all the circumstances a reasonable person in the defendant's position would have known that the commission of murder was a natural and probable consequence of the commission of the crime of disturbing the peace or of the crime of carrying a concealed firearm by a gang member.' " (*Curiel*, *supra*, 15 Cal.5th at p. 446.)

12

aforethought." (*Curiel*, at p. 462.) The Supreme Court explained that because subdivision (a)(3) of the amended section 188 effectively eliminated the natural and probable consequences theory of murder liability "a defendant cannot [currently] be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought." (*Curiel*, at p. 462.) The court thus held the jury instructions *in that* case did not foreclose the possibility as a matter of law that the jury imputed malice to convict the defendant of the unintended crime of murder, because it found the defendant intended to aid and abet a target offense (described in the instructions as disturbing the peace or carrying a concealed firearm by a gang member). (*Id*. at pp. 446, 467–468.)

The court noted that its holding did "not necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance [as] jury instructions in other cases might be materially different, and they might therefore have required different factual findings by the jury." (*Curiel*, *supra*, 15 Cal.5th at p. 471.) The court explained that it held "only that under the jury instructions [in that case], the findings the jury must have made are insufficient to conclusively establish that [the defendant] is liable for murder under current law. The jury could have relied on the natural and probable consequences doctrine to convict Curiel of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang." (*Ibid*.)

In sum, *Curiel* has no application to defendants' contentions, as the instructions given were different. Unlike the *Curiel* jury, defendants' jury could not have relied on the natural and probable consequences doctrine, as there was no instruction regarding the doctrine or how it would be applied, and no target crime was identified. (See *People v. Medina*, *supra*, 46 Cal.4th at p. 920.)

13

## IV. *Implied malice vs. imputed malice*

Perdomo appears to suggest the jury could have applied the natural and probable consequences doctrine because CALCRIM No. 520 included the phrase, "natural and probable consequence." Among other things CALCRIM No. 520 defined express and implied malice, explained causation and defined natural and probable consequence. Malice was defined as: "The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural consequences of the act were dangerous to human life; []¶ 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life." Causation as explained in CALCRIM No. 520 is: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act." The instruction also explains that a natural, and probable consequence is "one that a reasonable person would know is likely to happen if nothing unusual intervenes."

CALCRIM No. 520 clearly refers to implied malice, not to any theory of imputed malice. They are different concepts, and "while the words 'natural' and 'consequences' overlap, the rest of the two formulations are completely different. '[T]he use of the term 'natural consequences' in the . . . definition of implied malice does not import into the crime of murder the caselaw relating to the distinct 'natural and probable consequences' doctrine developed in the context of aiding and abetting liability.'" (*People v. Carr* (2023) 90 Cal.App.5th 136, 144.)

It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions. (*People v. Lewis* (2001) 26 Cal.4th 334, 390.) Defendants give no reason why

14

the jury might have confused one term with a similar term in an instruction the jury was never given.[8]

## V.     *Conclusion*

In sum, the record of conviction shows defendants were convicted on a theory of aiding and abetting murder, each harboring his own intent to kill, which remains a valid theory of murder following the amendments to sections 188 and 189.  Defendants failed to make a prima facie showing they are entitled to resentencing because the record of conviction conclusively refutes the allegations of the petitions they were convicted of murder under the natural and probable consequences doctrine, felony murder, or other theory under which malice was imputed to them due solely to their participation in a crime.

## DISPOSITION

The order denying both defendants' section 1172.6 petitions is affirmed.

NOT TO BE PUBLISHED.

_____

CHAVEZ, J.

We concur:

_____     _____

ASHMANN-GERST, Acting P. J.     HOFFSTADT, J.

---

[8]     Perdomo has not suggested any of the jurors had specific knowledge or any legal training that would cause them to independently think of and understand the natural and probable consequences doctrine or any other theory of imputed malice without instruction on such theories.

15